IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD SCOTT SMITH | : | CIVIL ACTION |
| v. | : | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security | : | NO. 18-3852 |

O P I N I O N

JACOB P. HART                                                                 DATE: 6/20/2019
UNITED STATES MAGISTRATE JUDGE

     Richard Scott Smith brought this action under 42 USC §405(g) to obtain review of the decision of the Commissioner of Social Security partly denying his application for Disability Insurance Benefits ("DIB"). He has filed a Request for Review to which the Commissioner has responded. As set forth below, I will deny Smith's Request for Review, and grant judgment in favor of the Commissioner.

I.     Factual and Procedural Background

     Smith was born on September 1, 1967. Record at 165. He graduated from high school. Record at 207. He worked in the past in landscaping, roofing, and construction. Record at 208. On May 7, 2015, Smith filed an application for DIB. Record at 165. In it, he alleged disability since March 23, 2015, as a result of degenerative disc disease, and depression and anxiety. Record at 206.

     Smith's application for benefits was denied on September 25, 2015. Record at 130. Smith then requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). Record at 135. A hearing was held in this matter on March 5, 2018. Record at 64.

On April 27, 2018, the ALJ issued a decision which was partly favorable. Record at 8. She found that Smith was disabled as of his fiftieth birthday, September 1, 2017. Record at 13. Although Smith appealed, seeking a fully favorable decision, the Appeals Council denied his request for review on July 10, 2018, permitting the ALJ's decision to stand as the final decision of the Commissioner. Record at 1. Smith then filed this action.

II.     Legal Standards

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence viewed objectively as adequate to support a decision. Richardson v. Perales, supra, at 401; Kangas v. Bowen, 823 F.2d 775 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979). Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards. Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s that meets or equals one of our listings in appendix 1 of this subpart and meets the

2

duration requirement, we will find that you are disabled. (iv). At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v). At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 CFR §404.1520 (references to other regulations omitted).

III.  The ALJ's Decision and Smith's Request for Review

In her decision, the ALJ determined that Smith suffered from the severe impairment of degenerative disc disease. Record at 15. She found his mental health impairments – including depression, anxiety, and drug and alcohol addiction – not to be severe. Record at 16. She further found that neither the degenerative disc disease, nor any combination of impairments, met or medically equaled a listed impairment. Record at 17.

The ALJ determined that Smith retained the residual functional capacity ("RFC") to engage in the full range of sedentary work, with a sit/stand option, and which permitted the use of a cane on uneven terrain. Record at 17. Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ found that, until he turned fifty, Smith could perform the requirements of such jobs as lapel pin assembler, lens inserter, and pharmaceutical egg processor. Record at 24. Therefore, she found that he was not disabled at that time. Id. However, the ALJ went on to find that once Smith turned 50, he entered a different age category, and was entitled to a disability finding under Medical-Vocational Rule 201.14. Id. She therefore awarded benefits as of September 1, 2017. Id.

In his Request for Review, Smith argues that the ALJ misinterpreted or selectively discounted evidence that he was disabled. He also argues that she improperly failed to give great weight to the opinions of his treating orthopedist and physical therapist, William Murphy, DO.

3

Finally, he argues that the ALJ misconstrued the evidence regarding his ability to participate in the activities of daily living.

IV.      Discussion

A.      The Medical Evidence

In his first argument, Smith sets forth numerous ways in which – he claims – the ALJ ignored or misinterpreted pertinent evidence. Broadly classified, Smith has raised issues as to how the ALJ handled (1) evidence of MRI testing; (2) Dr. Murphy's medical records; (3) records regarding his epidural injections; (4) emergency room records; (5) records from Premier Orthopedics; and (6) his hearing testimony.

1.      The MRI results

As to Smith's MRI results, the ALJ wrote:

> A[n] MRI of the claimant's lumbar spine was performed in June, 2013. The results revealed disc degeneration with broad disc protrusion, marginal osteophytosis, and facet joint degenerative disease resulting in left greater than right neural foraminal narrowing at L3-4 and L4-5, as well as disc degeneration with moderate broad-based disc protrusion and marginal osteophytosis eccentric to the right at L5-S1. The MRI further revealed there was no fracture, no dislocation, a normal vertebral body signal, a normal vertebral body height, a clear conus medullaris, and a normal canal size. In this same month, a[n] MRI of the thoracis spine showed diffuse degenerative thoracic disc disease/kyphosis, a six o'clock annular tear with small focal midline disc herniation at T7-8, mild disc protrusion at T5-6 and T6-7, a six o'clock radial annular tear without focal disc herniation at T8-9 and T11-12, and a small focal eccentric disc herniation to the right at T9-10, but no disc herniation at T11-12, T4-T5, T5-T6, or T8-9. Moreover, although a[n] MRI of the lumbar spine in May, 2015, indicated moderate right neural foraminal stenosis at L5-S1 with impingement of the right L5 nerve root and multilevel lumbar spondylosis, there was normal alignment, a normal spinal canal, normal levels at T11-T12 and T12-L1, no central or neural foraminal stenosis at L1-L2, and no central stenosis at L2-L3, L3-L4, L4-L5, and L5-S1.

Record at 19-20. (Internal citations omitted).

Smith argues that this analysis of the MRI records minimized the positive findings "by noting that the same findings were not present at other levels of the spine." Plaintiff's Memorandum of Law at 8. At the same time, he notes that the ALJ failed to set forth certain positive findings, namely: (a) "high grade disc degeneration with obliteration of the disc signal and disc height at L3-4," (b) impingement upon the right antral aspect of the spinal canal at T9-T10. Record at 272, and (c) bilateral L5 radiculopathy. Id.

Given that the MRIs showed numerous abnormalities in Smith's spine which were capable of causing pain, I agree that there was no real purpose in the ALJ's listing all the abnormalities he did *not* have. It can be reasonably read as an attempt to minimize the MRI findings. Nevertheless, it must be noted that the ALJ did find Smith to suffer from severe degenerative disc disease. She limited him to sedentary work with a sit/stand option. Clearly, she acknowledged that he had spinal abnormalities.

Further, since the ALJ did note stenosis and impingement of the nerve root at L5, foraminal narrowing at L3-4, and disc herniation at T9-10, the failure to recite the specific findings Smith has identified did not materially misrepresent the condition of his back.

2. Dr. Murphy's Medical Records

The record contains many treatment notes from Dr. Murphy. In a number of Dr. Murphy's reports, he stated under "Treatment Recommendations": "Pt. remains disabled from all work." Record at 315, 433, 454. Dr. Murphy also certified that Smith was disabled on forms issued by the Department of Public Welfare, and for the Domestic Relations Division of the Court of Common Pleas for Delaware County. Record at 467, 478. He also completed a number of Medical Source Statement forms. Record at 414, 456, 597.

5

Most recently, on November 30, 2016, Dr. Murphy completed a form entitled Medical Opinion Re: Ability to Work-Related Activities (Physical). Record at 597. In it, Dr. Murphy indicated that Smith could lift and carry ten pounds occasionally, but less than that weight frequently. Id. He could stand/walk for about three hours, and sit for about three hours, in an eight-hour workday, cumulatively. Id. He also indicated that Smith would need to lie down at unpredictable times, 2-4 times in a workday. Id. He would be absent more than four days per month because of his impairment or treatment. Record at 598. These limitations were caused by Smith's spinal herniations. Id.

Although Smith argues that the ALJ "failed to acknowledge" this form, the ALJ in fact wrote: "In May, 2015 *and November, 2016*, Dr. Murphy opined that the claimant is capable of performing less than the full range of sedentary exertional work." Record at 22. The ALJ gave Dr. Murphy's opinions "some weight." She wrote that she agreed that Smith was capable of less than the full range of sedentary work. Record at 22. She wrote, however, that Dr. Murphy "overstated the claimant's limitations." Id.

The ALJ gave more weight to the opinion of Pramod Digamber, MD, an orthopedist who conducted a physical consultative examination on September 17, 2015. Upon examination, Dr. Digamber found that Smith's gait was normal, though slow. Record at 550. His joints were normal in appearance. Id. His strength was 5/5 in both his arms and legs. Record at 550-551. There was no muscle atrophy in any limb. Id. Reflexes were normal, and there was no sensory abnormality. Id. According to Dr. Digamber, Smith told him that he helped with cooking, cleaning, laundry and shopping. Record at 549.

The ALJ did not accept Dr. Digamber's opinion that Smith could stand or walk for six hours in an eight-hour workday or occasionally lift and carry up to 20 pounds. Record at 21, 552-3. However, she gave "great weight" to his finding that Smith could sit for six hours in an eight-hour day. Record at 21, 553.

Smith argues that the medical opinions of Dr. Murphy should have been given greater weight than those of Dr. Digamber, who only examined him on one occasion, based on Dr. Murphy's long treatment history with Smith, and his specialty in physical medicine. However, the ALJ has a duty to survey all of the medical evidence to craft an RFC. Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). She does not need to accept any one report as a whole, since there is no legal requirement that a physician have made the particular findings that the ALJ adopts in the course of determining an RFC. Id. In any event, she accepted Dr. Murphy's opinions to the extent that she limited Smith to less than the full range of sedentary work, rejecting Dr. Digamber's findings to the contrary.

The ALJ also relied upon a physical examination of Smith which took place on July 7, 2017, in the Emergency Department of Crozer Chester Medical Center. Record at 20-21, 886. (The ALJ mistakenly identified the examination as having taken place in December, 2017). There, although Smith was found to have edema in both legs, his legs had a normal range of motion and normal strength and sensation. Record at 887. He had a normal range of motion in his back, with no tenderness. Record at 886-7. His gait was also noted to be normal. Record at 887.

Similarly, on August 4, 2016, Smith sought emergency room treatment for lower back pain after he fell asleep in his car and hit a curb. Record at 734. At that time, however, Smith's physical examination was also largely normal, with a full range of motion in all extremities, and

7

no focal motor or sensory deficits. Record at 20, 735-6. These normal examinations tended to support the ALJ's conclusion that Smith was not completely disabled in the relevant time period, although he was very much limited.

Further, Smith represented himself as able to engage in a fairly broad range of daily activities. He indicated in his function report that he lived alone and prepared his own simple meals. Record at 218, 220. He was able to drive daily. Record at 221. He did his own shopping for groceries and clothing. Id. Smith could also do laundry and vacuum, although with discomfort. Id. The ALJ took this into account when finding that the evidence did not completely support Dr. Murphy's opinion that Smith was disabled. Record at 18-19.

3. The Epidural Injections

The ALJ accurately observed that a January 16, 2016, note from Grossinger Neuropain Specialists, made on the day that Smith obtained his "second in a series of lumbar facet injections," stated: "Richard Smith is a pleasant gentleman who had a favorable response to his first set of lumbar facet injections." Record at 20, 585.

However, on August 16, 2016, Dr. Grossinger explained that the facet injections were tried because the lumbar epidurals Smith underwent previously were not effective. Record at 564. The facet injections themselves provided "at best" 80% relief "that was non-sustained." Id. This led Dr. Grossinger to try radiofrequency ablation ("RF"), which he wrote: "has provided significant benefit to his low back pain though the radiculopathy continues." Id. Because of Smith's continued pain, Dr. Grossinger was about to commence "a trial of lumbar selective nerve root blocks." Id.

8

There is some basis for Smith's complaint that it was misleading for the ALJ to have mentioned the first, positive note, without also describing the later note, which indicated that the lumber facet injections were not ultimately satisfactory, and that he continued to suffer from radicular pain. Here again, however, the larger picture must be kept in mind. The ALJ clearly recognized that Smith was greatly limited by his symptoms. Nevertheless, taking into account his largely normal physical examinations and his range of daily activities, she found he could perform sedentary work with a sit/stand option and a cane for uneven surfaces. Under the regulations, therefore, Smith was not disabled until he turned fifty.

4. <u>Emergency Room Records</u>

Smith argues that it was unfair for the ALJ to rely upon his normal physical examinations in emergency room treatment records, without reporting that he sought treatment because of back pain. This is not wholly accurate, since Smith sought emergency treatment on July 7, 2017, because of shortness of breath.

As to the August 13, 2016, treatment, the emergency room personnel diagnosed Smith simply with low back pain after his motor vehicle accident, noting that he reported a history of spinal stenosis. Record at 735, 736. Smith argues that this was the "only data present" in the emergency room notes. Plaintiff's Brief at 10. On the contrary, however, Smith's normal physical findings, steady gait, and lack of neurological symptoms were relevant to the ALJ's disability determination. Also relevant, although not noted by the ALJ, was the fact that Smith was able to leave the hospital unassisted on a bus. Record at 736.

Smith also claims that the ALJ wrongly relied on records from a January, 2018, emergency room visit to "eviscerate" his claim of back pain. The ALJ's decision does not cite these records. In any event, the January, 2018, treatment took place over four months after September 1, 2017, the date upon which the ALJ found Smith to be disabled, so the records would not be relevant to her decision.

The ALJ did cite emergency room records from June, 2017, when Smith sought treatment for edema in his legs. Record at 704. Here, again, Smith was found to have normal strength and range of motion, and a normal neurological status. Record at 704.

5. Examination at Premier Orthopedics

Smith is correct in stating that the ALJ failed to mention a four-page examination report prepared on June 7, 2017, by Richard Levenberg, MD, of Premier Orthopedic and Sports Medicine Associates. Record at 906. As Smith states, the report records finding of an antalgic gait, and paraspinal muscle spasm with a painful range of motion in the lumbar spine. Record at 908.

The ALJ's failure to mention this record can not be described as cherry-picking, however, since – like all of Smith's medical examination records – it contained many normal findings, as well as abnormal findings. Along with the abnormal findings set forth above, the examination revealed normal posture; normal lumbar motor findings; normal sensory findings in the entire spine; and normal strength, range of motion, and reflexes in the lower extremities. Record at 908. The results as a whole are generally consistent with the RFC that the ALJ assessed. Thus, even if the ALJ erred in failing to discuss this record, remand is not necessary because there is no real chance that a discussion of this examination report would change the ALJ's determination.

6. Smith's Testimony

The ALJ spent two paragraphs discussing Smith's representations, both in his function report and in his hearing testimony. She wrote:

> The claimant has alleged disability and inability to work due to degenerative disc disease, anxiety, and depression. Further, the claimant indicated in a function report that due to his impairments, he has difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, completing tasks, concentrating, understanding, following instructions, and using his hands. During the claimant's hearing, the claimant testified he suffers from back pain, which radiates down to his legs and toes, bilateral leg pain, bilateral leg swelling, bilateral feet numbness, depression and anxiety. He also noted that he last drank alcohol eight to ten months ago and sometimes goes to Alcoholics Anonymous meetings. Further, the claimant indicated his medications help, and the patch helps a little. Regarding standing, he stated he can stand for two to three hours and then needs to sit for 30 minutes. Moreover, the claimant mentioned he can walk for 30 minutes before his back starts hurting. He reported he can sit for 30 minutes at a time. Additionally, the claimant testified he uses a cane.
>
> The claimant also indicated he lives alone, prepares his own meals, does laundry, drives a car, pays bills, counts change, handles a savings account, uses a checkbook, spends time with others, goes outside daily, goes out alone, goes shopping in stores, vacuums, gets along well with authority figures, does not need any special reminders to take care of his personal needs and grooming, has never been fired or laid off from a job due to problems getting along with others, does not need to be reminded to go places, does not need any help or reminders to take his medicine, and has no problems getting along with family, friends, neighbors or others. The claimant has described daily activities that are inconsistent with his allegations of disabling symptoms and limitations.

Record at 18-19.

Smith argues that the ALJ misrepresented his testimony by writing that he testified that his medication helped, when he actually testified: "I take gabapentin, which is a nerve medicine. I take that and it's – it helps, but it's – I'm still having – you know, I'm still having problems." Record at 82. This, however, is not inconsistent with what the ALJ wrote. She acknowledged that he testified that he suffered from back and leg pain, swelling in his legs, and numbness in his feet. At the risk of being repetitive, if the ALJ had not believed that Smith suffered from "problems" despite his medication, she would not have assessed such a limited RFC.

11

Smith also maintains that the ALJ should not have written that he could stand for two to three hours. His actually testimony was: "I can stand about – about two, three hours, and I have to – I have to be moving, too, I can't sit in one area too long." Record at 83. Later, in response to questioning from his counsel, he testified that he could stand still in one place for only half an hour. Record at 96. It is not clear that this testimony was inconsistent with what the ALJ wrote. Even if it was, the difference is immaterial, since the ALJ assessed an RFC for sedentary work with a sit/stand option – thus, the jobs identified in her decision would permit Smith to stand at will for as long or as little as he wanted.

B.   Dr. Murphy

The arguments Smith puts forward in his claim that the ALJ erred in failing to give more weight to the opinions of Dr. Murphy, his treating orthopedist, have essentially been addressed above in connection with his argument that the ALJ erred in failing to discuss Dr. Murphy's November 30, 2016, report.

As discussed, the ALJ considered Dr. Murphy's evidence, including the report issued in November, 2016, and partly adopted it. Record at 22. However, to some extent, she found that Dr. Murphy overstated Smith's limitations. In so finding, she relied upon the opinion of Dr. Digamber, as well as the results of other physical examinations of Smith, and the evidence regarding his daily activities. As above, I have concluded that the ALJ's decision in this regard was adequately supported by substantial evidence.

C. <u>Smith's Daily Activities</u>

As noted, the ALJ relied to a substantial extent on Smith's activities of daily living in finding that he was not disabled. Smith argues that his "limited activities of daily living do not show ability to perform the full range of sedentary work" in terms of either his physical or mental health. Plaintiff's Brief at 15.

Smith argues that it was inaccurate for the ALJ to find that he could dress and bathe himself, prepare his own meals, shop and do housework, without mentioning his representation that he bathed and dressed slowly, could only prepare very simple meals, and did housework and shopped only every two weeks. Record at 218, 220. He also argues that there was no evidence that he went out daily by himself.

In fact, Smith indicated in his function report that he drove daily. Record at 221. At the hearing, he testified that he took public transportation when he had help paying for his fare. Record at 74, 79. In response to the form question: "When going out, can you go out alone?" he responded "yes." <u>Id</u>. As to the rest of Smith's daily activities, it may be true that no one of them shows the ability to engage in full-time work, but the combination of them was appropriately relied upon by the ALJ as evidence that Smith was able to perform the limited work-related activities she specified in her RFC assessment before he turned fifty.

Regarding Smith's mental health, he testified to having anxiety attacks, but he did not testify that he limited his daily activities in any way to accommodate symptoms of mental illness, such as by self-isolating. Record at 88-90. I also note that Smith has not challenged the ALJ's decision that his depression, anxiety, and drug and alcohol addiction were not severe impairments. Record at 16.

13

V.  <u>Conclusion</u>

In accordance with the above discussion, I conclude that the decision of the ALJ should be affirmed, and judgment entered in favor of the Commissioner.

BY THE COURT:


/s/Jacob P. Hart
_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE